Wiggins
Paper No. 9

FOR PUBLICATION IN FULL

U.S. DEPARTMENT OF COMMERCE

PATENT AND TRADEMARK OFFICE

---

Trademark Trial and Appeal Board

---

In re Dayco Products-Eaglemotive, Inc.

---

Serial No. 673,493

---

Joseph V. Tassone, and Reuben Wolk for applicant.

David Stine, Trademark Examining Attorney, Law Office 8
(Sidney Moskowitz, Managing Attorney).

Before Sams, Krugman, and Hanak, Members.

Opinion by Krugman, Member:

Dayco Products-Eaglemotive, Inc. has applied to register
"IMPERIAL" as a trademark for automotive products, namely, fans,
fan blades, fan spacers, fan spacer kits, idler pulleys, idler
assemblies, transmission fluid coolers, oil coolers, and
combination coolers.[1]

Registration has been refused under Section 2(d) of the
Trademark Act in view of the previously registered mark "IMPERIAL"
for automobiles and structural parts thereof.[2]  When the refusal
of registration was made final, applicant appealed.

---

[1]  Application Serial No. 673,493 filed June 18, 1987.

[2]  Registration No. 1,109,940 issued February 16, 1982 to
Chrysler Corporation.  Section 8 affidavit accepted.

It is applicant's position that, while the marks are identical, they are weak marks, as evidenced by many third party registrations for the same or similar mark, and that the cited registration, therefore, is entitled to a relatively narrow scope of protection. With respect to the goods, applicant notes that the goods encompassed by the cited registration comprise automobiles and structural parts thereof which, applicant contends, are items that the public would normally seek at a franchised Chrysler dealership or a used car dealership while applicant's goods are in the nature of accessories sold through distributors who then sell them to auto accessory stores or directly to the public.

Finally, applicant asserts that this application presents special circumstances because applicant has previously been granted a registration for the mark "IMPERIAL" for fan clutches and that the goods identified in the instant application are closely related to fan clutches.

The Examining Attorney maintains that the existence of third party "IMPERIAL" registrations cannot aid an applicant who seeks to register another confusingly similar trademark; that while applicant owns a registration for "IMPERIAL" for goods related to those involved herein, the instant application seeks to expand the scope of the covered goods considerably, thereby increasing the opportunity for consumer confusion and that, in any event, the Office is not bound by the fact that applicant's prior registration was issued, perhaps incorrectly, for the same mark for related goods.

2

The Examining Attorney points to the respective goods in the application and the cited registration and concludes that there is a close and intimate relationship between vehicles and replacement components for such vehicles warranting a finding of likelihood of confusion where these goods are sold under the same or similar marks, citing In re Jeep Corp., 222 USPQ 333 (TTAB 1984); In re General Motors Corp., 196 USPQ 574 (TTAB 1977); International Harvester Co., v. Hull Mfg. Co., 157 USPQ 203 and In re Sien Equipment Co., 190 USPQ 84 (TTAB 1976).

The Board has frequently found that the use by different parties of the same or similar marks for vehicles, on the one hand, and for various vehicle parts, on the other, is likely to result in confusion for purposes of Section 2(d) of the Act. See; Jeep, supra at 334, 335 and cases cited therein. While each case must, of course, be determined on its own facts and merits, the prior cases have precedential value to the extent that they involve facts similar to those involved in this case. Id. at p.336.

In the present case, we have identical marks used in connection with vehicles and structural parts thereof and on various automotive engine parts. While we are satisfied that the respective goods are related products having potentially overlapping trade channels and classes of purchases, we believe the marks involved herein are weak, laudatory designations which should be afforded a more restricted scope of protection than would an arbitrary distinctive mark. In this regard, the applicant has made of record a number of third party registrations

.3

in the vehicular field which comprise the term "IMPERIAL" either by itself or as a part of a composite mark. These include "IMPERIAL" and design for boats, "MARK IMPERIAL" for tires, "IMPERIAL" for contour seats and seat suspensions for tractors, trucks and buses, "IMPERIAL FALCON" for resilient vehicle tires, "IMPERIAL MOBILE HOMES" and design ("MOBILE HOMES" disclaimed) for house trailers, "DAVIS IMPERIAL" for pneumatic tires and inner tubes for bicycles, "VISOR IMPERIAL" for automobile visor attachment for holding articles, "AUBURN IMPERIAL" for spark plugs, "ATLAS IMPERIAL" for diesel engines and parts thereof, "IMPERIAL" for various engine parts and "IMPERIAL CLEVITE" and design for ferrous powdered metal products for automobiles and trucks, namely, gears, lever arms, pump bodies, pressure plates and transmission parts and for various engine parts and structural parts for automobiles and trucks. Moreover, as noted earlier, applicant itself is the owner of a registration for "IMPERIAL" for fan clutches.

While the Examining Attorney is correct in his assertion that these third party registrations are of limited probative value, they are useful to demonstrate the sense in which a term is used in ordinary parlance and they can show that a particular term has been adopted by those engaged in a certain field or industry and that said term has less than arbitrary significance with respect to certain goods or services. See; Sams, Third Party Registrations in TTAB Proceedings, 72 TMR 297 (May-June, 1982).

4

Ser. No. 673,493

In our view, the submission of the third party registrations is probative to demonstrate that "IMPERIAL" has been adopted by others in the vehicular field to refer to that term's ordinary significance as a laudatory designation. See: Webster's Third New International Dictionary (1976) which defines "imperial", inter alia, as "of superior or unusual size or excellence." As such, we find the term to be a relatively weak mark and we agree with applicant that the scope of protection afforded such a mark is considerably narrower than that afforded a more arbitrary designation.[3] Compare: In re Eldorado Motor Corp. 6 USPQ2d 1732 (TTAB 1988) and cases cited therein. We think the weakness of the marks involved herein is a significant factor and serves, in this case, to "tip the scales" in favor of a finding of no likelihood of confusion.

Decision: The refusal of registration is reversed and the mark will be published for opposition in due course.

J. D. Sams

G. D. Krugman

E. W. Hanak
Members, Trademark
Trial and Appeal Board

---

[3] Our conclusion as to the weakness of the term "IMPERIAL" in the vehicular industry is based, of course, solely on the limited record before us in this ex parte proceeding. In the context of an inter partes proceeding with a different record presented, we could very well reach a contrary determination on the relative strength or weakness of the term.

·5

DEC 14 1988